UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————
                                 :

CHRISTOPHER RICHINS and BRANDON     :     Civil Action No.:
OKANO, on behalf of themselves and others   :     2:12-CV-01110(LDW)(GRB)
similarly situated,                          :

                       Plaintiffs,    :

     -against-                      :

                                   :

HOFSTRA UNIVERSITY, MAURICE A.     :
DEANE SCHOOL OF LAW AT HOFSTRA   :
UNIVERSITY, and DOES 1-20,          :

                     :

                     Defendants.   :
——————————————————————— :

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO <u>PLAINTIFFS' MOTION TO REMAND</u>

PROSKAUER ROSE LLP

Lawrence I. Weinstein
Evan B. Citron
Eleven Times Square
New York, NY 10036
P:  (212) 969-3000
F:  (212) 969-2900

*Attorneys for Defendants*
*Hofstra University and*
*Maurice A. Dean School of Law at*
*Hofstra University*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................... 5

ARGUMENT ......................................................................................................................... 6

I. THIS COURT HAS ORIGINAL JURISDICTION UNDER CAFA ............................................ 6

II. REMAND IS IMPROPER BECAUSE PLAINTIFFS' ACTION DOES NOT
QUALIFY FOR AN EXCEPTION TO JURISDICTION UNDER CAFA .................................. 8

      A.      The Local Controvery and Home-State Exceptions Do Not Apply Because
            Plaintiffs Have Failed to Prove That Two-Thirds of the Members of Their
            Broadly Defined Class Are New York Citizens ....................................................... 8

      B.      There Is No Basis For Discretionary Remand ...................................................... 22

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anthony v. Small Tube Mfg. Corp.*,
  535 F. Supp. 2d 506 (E.D. Pa. 2007) .........................................................10, 19, 20

*Bank of India v. Subramanian*,
  2007 WL 1424668 (S.D.N.Y. May 15, 2007) .........................................21

*Bennett v. Bd. of Comm'rs for E. Jefferson Levee Dist.*,
  2007 WL 2571942 (E.D. La. Aug. 31, 2007) .........................................12

*Blockbuster, Inc. v. Galeno*,
  472 F.3d 53 (2d Cir. 2006).........................................................6, 7

*Brook v. UnitedHealth Grp. Inc.*,
  2007 U.S. Dist. LEXIS 73640 (S.D.N.Y. Sept. 28, 2007).........................8

*Commisso v. PricewaterhouseCoopers LLP*,
  2012 U.S. Dist. LEXIS 105151 (S.D.N.Y. July 26, 2012) .....................11

*Dehart v. BP Am. Inc.*,
  2010 U.S. Dist. LEXIS 3020 (W.D. La. Jan. 14, 2010).........................10

*Dicuio v. Brother Int'l Corp.*,
  2011 U.S. Dist. LEXIS 131553 (D.N.J. Nov. 15, 2011).........................10

*Evans v. Walter Indus.*,
  449 F.3d 1159 (11th Cir. 2006) .........................................................12, 18

*Foley v. Cordillera Golf Club, LLC*,
  2012 U.S. Dist. LEXIS 48108 (D. Colo. Apr. 5, 2012).........................25

*Froud v. Anadarko E&P Co. Ltd. P'ship.*,
  2010 U.S. Dist. LEXIS 35929 (E.D. Ark. Mar. 16, 2010).....................10

*Gerstenecker v. Terminix Int'l, Inc.*,
  2007 WL 2746847 (S.D Ill. Sept. 19, 2007).........................................18

*Gomez-Jiminez v. New York Law Sch.*,
  Index No. 652226/2011 (Sup. Ct. N.Y. Co. 2011) .............................25

*Harnish v. Widener Univ. Sch. Of Law*,
  No. 12-cv-00608-WHW-MCA (D.N.J. 2012).........................................24

*Hart v. FedEx Ground Package Sys.*,
  457 F.3d 675 (7th Cir. 2006) .........................................................9

*In re Sprint Nextel Corp.*,
  593 F.3d 669 (7th Cir. 2010) ................................................................................ passim

*Joseph v. Unitrin, Inc.*,
  2008 U.S. Dist. LEXIS 61726 (E.D. Tex. Aug. 11, 2008) ...............................10, 12

*King v. Safeway*,
  2008 WL 1808545 (N.D. Cal. Apr. 22, 2008) ...............................................................19

*Lancaster v. Daymar Colls. Grp., LLC*,
  2012 U.S. Dist. LEXIS 34347 (W.D. Ky. Mar. 14, 2012).......................................10

*Lancaster v. Daymar Colls. Grp., LLC*,
  2012 WL 524459 (W.D. Ky. Feb. 15, 2012) ...............................................16, 23

*Lancaster v. Daymar Colls. Grp., LLC*,
  2012 WL 884898 (W.D. Ky. Mar. 14, 2012) .......................................................18

*MacDonald, Jr. v. Thomas M. Cooley Law Sch.*,
  No. 11-cv-00831-GJQ (W.D. Mich. 2011)............................................................24

*Martin v. Lafon Nursing Facility of the Holy Family, Inc.*,
  548 F. Supp. 2d 268 (E.D. La. 2008) .......................................................................12

*Mattera v. Clear Channel Commc'ns, Inc.*,
  239 F.R.D. 70 (S.D.N.Y. 2006) ...............................................................................11

*McMorris v. TJX Cos.*,
  493 F. Supp. 2d 158 (D. Mass. 2007) ...........................................16, 18, 20

*Nicholas v. Progressive Direct Ins.*,
  2007 WL 1035014 (E.D. Ky. Mar. 31, 2007).........................................................19

*NYC St. Tree Consortium, Inc. v. Eber-Schmid*,
  2009 WL 398726 (S.D.N.Y. Feb. 18, 2009)...........................................................20

*Palazzo v. Corio*,
  232 F.3d 38 (2d Cir. 2000)...........................................................................................9

*Phillips v. DePaul University*,
  No. 1:12-cv-01791 (E.D. Ill. April 24, 2012) .........................................................21

*Phillips v. Severn Trent Envtl. Serv., Inc.*,
  2007 WL 2757131 (E.D. La. Sept. 19, 2007) .........................................................18

*Preston v. Tenet Healthsystem Mem'l Med. Ctr. Inc.*,
  485 F.3d 793 (5th Cir. 2007) ...................................................................................10

*Rasberry v. Capitol Cnty. Mut. Fire Ins. Co.*,
  609 F. Supp. 2d 594 (E.D. Tex. 2009).................................................................25

*Romano v. SLS Residential, Inc.*,
  812 F. Supp. 2d 282 (S.D.N.Y. 2011).................................................................11

*Sanchez v. Aviva Life & Annuity Co.*,
  2009 U.S. Dist. LEXIS 79712 (E.D. Cal. July 16, 2009) .......................................7

*Schwartz v. Comcast Corp.*,
  No. 05-2340, 2006 WL 487915 (E.D. Pa. Feb. 28, 2006) .................................15, 19

*Serrano v. 180 Connect, Inc.*,
  478 F.3d 1018 (9th Cir. 2007) ..............................................................................7

*Sluberski v. Lakeside Manor Home for Adults*,
  1996 WL 1088902 (E.D.N.Y. Nov. 19, 1996).......................................................21

*Sorrentino v. ASN Roosevelt Ctr., LLC*,
  588 F. Supp. 2d 350 (E.D.N.Y. 2008) .......................................................... passim

*Webb v. Riceland Foods, Inc.*,
  2008 U.S. Dist. LEXIS 112425 (E.D. Ark. Nov. 17, 2008) ...............................25


**STATUTES**

28 U.S.C. § 1332(d) et seq..................................................................9, 22, 23, 25

New York General Business Law § 349 ...................................................................5


**OTHER AUTHORITIES**

Karen Sloan, *Fresh Round of Litigation Targets 12 Law Schools Over Jobs Data*, The
National Law Journal, Feb. 1, 2012..........................................................................24

Lisa van der Pool, *Law Schools Sued After Grads Can't Find Jobs*, CBS Boston Business
Journal, Apr. 4, 2012................................................................................................24

## PRELIMINARY STATEMENT

In their Motion to Remand, Plaintiffs ask this Court to ignore their total failure to carry their burden of proof, as that burden has been defined by the extensive body of case law construing the Class Action Fairness Act ("CAFA").  Instead, Plaintiffs ask this Court to adopt a chain of inferences and assumptions numerous other federal district courts have refused to make and that has no basis in the factual record or in common sense.  No craftsmanship in brief writing can obscure Plaintiffs' fatal inability to produce -- as CAFA requires -- specific proof demonstrating that two-thirds, or even one-third, of the proposed class were New York citizens on February 1, 2012, when this Complaint was filed.  Plaintiffs' tactics, namely, mischaracterizing facts, cartoonishly impugning Hofstra's credibility, and citing inapposite cases that do not even involve CAFA, culminate in a plea, unsupported by law or evidence, that this Court should simply assume, without any of the evidence generally required by federal courts, that two-thirds of Plaintiffs' proposed class were New York citizens on February 1, 2012.[1]

In fact, Plaintiffs have made their own bed.  Their class definition is not limited to New York citizens, which would have allowed them to maintain their suit in state court.  Instead, the Complaint alleges a broad class that extends to anyone who obtained a degree from Hofstra law school in or after the law school graduating class of 2006, or who is currently enrolled in the Hofstra law school JD program.  *See* Compl. ¶ 40. But Plaintiffs fail to offer sufficient evidence demonstrating the citizenship of any of their proposed class members, let alone the two-thirds required to warrant remand under the local controversy and home-state exceptions.

---

[1] "Hofstra" or "Defendants," as used herein, shall mean Defendant Hofstra University.  The Maurice A. Deane School of Law at Hofstra University is not a separate legal entity, and thus was not properly sued in this case.

Plaintiffs' central argument is that student and alumni address information produced by Hofstra indicates that two-thirds of the members of the proposed class were New York citizens at the time the Complaint was filed.  Besides being completely illogical, that argument is premised on an assertion that misrepresents Hofstra's address information, and collapses under scrutiny. While Plaintiffs attempt to frame the argument in terms of proposed class members who at some time in the past provided Hofstra with *a* New York address, they utterly fail to account for students and alumni who listed addresses *in more than one state*, thus ignoring the fact that much of the address information in Hofstra's possession is ambiguous even as to where the class members lived *when they provided address information to Hofstra*.  Moreover, even if that information were current, it still would be insufficient to establish the class members' citizenship under the many cases cited and discussed in the Argument section of this Memorandum.

For purposes of determining class citizenship under CAFA, stale information is useless information, as the cases construing CAFA make clear.  Forty-nine percent of the putative class members for whom Hofstra has address information have not updated *any* address information since August 2011, fully eighteen months prior to the commencement of this lawsuit.[2]  As discussed below, case after case holds that information substantially pre-dating the filing of the complaint is not probative under CAFA of class member citizenship at the time of the lawsuit. Nor is address information (which is the only information  Hofstra (and hence Plaintiffs) have), no matter how current, determinative of the *citizenship* of putative class members on February 1, 2012.  Essentially, Plaintiffs' remand motion avoids altogether the fact that none of the address information that Hofstra maintains, and that it produced to Plaintiffs, establishes a particular

---

[2] *See* Declaration of Evan B. Citron, dated August 21, 2012 ("Citron Decl."), ¶ 7.

student or alumni's domicile.  Plaintiffs' reliance on old employment statistics published by *U.S. News & World Report* during portions of the six-year class period is equally futile.

This Court surely would not be surprised to learn that, during any given school year, most if not all students attending Hofstra law school live in New York.  But that fact has nothing to do with whether such students are *citizens* of New York.  To be a citizen of New York, as opposed to a resident, one must intend to remain in New York.  Students who are dependants of families located outside of New York, or who otherwise consider their home to be outside of New York, do not qualify as citizens even if they attend Hofstra law school for nine months of the year and have a summer job in New York the other three months.

This Court also surely would not be surprised to learn that, like many mailing lists, Hofstra's mailing lists are stale for the purpose of determining citizenship, and there is no way of knowing whether an alumni's most recently updated address is current.  Plaintiffs ask the Court simply to assume that just because a student or alumni provided a New York address to Hofstra at some point in time, possibly as far back as nine years ago, he or she was a New York citizen on February 1, 2012.  The idea that this assumption could satisfy Plaintiffs' burden of proof is devoid of any basis in law.

To distract from the weakness of their evidentiary showing, Plaintiffs resort to taking cheap and utterly baseless shots at Hofstra.  Plaintiffs correctly note that student and alumni addresses produced by Hofstra were accompanied by codes (e.g., "Mailing," "Business," etc.).  They then complain that none of the addresses were coded as "Residential," accuse Hofstra of improperly withholding residential addresses, and request an adverse inference as a result.  But Judge Brown's order simply required Hofstra to produce the address information it had, not to attempt to compile information it did not have.  The sole reason Hofstra did not produce address information coded as residential is that it does not maintain address information coded as

residential.  Instead, Hofstra produced the information it had, under the codes it maintained.

That was entirely consistent with this Court's order directing discovery, and any suggestion

otherwise by Plaintiffs is, at best, misinformed.

Plaintiffs further muddy the waters by citing to a bevy of non-CAFA cases in an attempt

to shirk their burden of proof.  By citing non-CAFA cases for the proposition that removal is

generally disfavored, Plaintiffs ignore that this proposition is not applicable to CAFA, and that

Congress' *express* purpose in enacting CAFA was to *favor* removal of large class actions to

federal court.  Similarly, by claiming that their motion should be subject to a "reasonably likely"

burden of proof standard, Plaintiffs seek to avoid the more exacting preponderance of the

evidence standard employed by nearly all federal courts in CAFA cases.  And finally, by arguing

that Hofstra bears the burden of proving that stale address information is *not* accurate, Plaintiffs

get the law under CAFA entirely backwards.  Plaintiffs' failure to provide proof of the putative

class members' citizenship forecloses them from triggering the local controversy and home-state

exceptions, and it also prevents them from qualifying for the discretionary exception.  Moreover,

the interests of justice also weigh against remand here:  Plaintiffs' suit is but one piece of a

broad, nationwide litigation agenda advanced by Plaintiffs' counsel; their allegations indicate

that the CAFA jurisdictional prerequisites are present; and similar allegations have been made

within the last year against numerous law schools through the country.

**BACKGROUND**

On February 1, 2012, Plaintiffs filed a proposed class action complaint against Hofstra (the "Complaint") alleging violations of New York General Business Law § 349, fraud, and negligent misrepresentation.[3]  Instead of defining the class in terms of citizenship or residency, Plaintiffs instead defined it as:

> All persons who are either presently enrolled or have attended the Maurice A. Deane School of Law at Hofstra University to obtain a JD degree within a six-year period prior to February 1, 2012.

Compl. ¶ 40.  Plaintiffs' action is one of many nearly identical lawsuits filed against law schools in state and federal courts across the nation ostensibly on behalf of current law students and alumni.  *See* Citron Decl. Ex. A (list of similar cases filed against law schools across the United States).  Nearly all of those suits were brought by Plaintiffs' counsel.  *See id.*

On March 6, 2012, Hofstra removed Plaintiffs' action pursuant to CAFA.  Docket No. 1. In an Order dated June 5, 2012, in connection with Plaintiffs' contemplated motion to remand, Magistrate Judge Brown instructed Hofstra to produce information it possessed concerning addresses of students and alumni included in the proposed class.  Docket No. 19.  Hofstra had previously advised Plaintiffs and the Court that address information for Hofstra law school students and alumni was maintained in a single university-wide database called Banner.  Docket No. 16.  As students and alumni may (and frequently do) provide Hofstra with multiple addresses which they use for various purposes, the Banner database uses codes to identify each address provided by each student or alumni.  *Id.*[4]  While Banner includes, *inter alia*, "Mailing" and "Business or Work" codes for addresses, it does not include a "Residence" code for

---

[3] Plaintiffs' Complaint was filed in the Supreme Court of the State of New York, Nassau County, under Index No. 600138/2012.

[4] *See* Citron Decl. Ex. B (Letter from Counsel for Hofstra to Counsel for Plaintiffs dated June 15, 2012).

addresses.  *See* Citron Decl. Ex. B.  It is common for a student or alumni's address information

in Banner to include addresses in more than one state.  Of the 2,986 students and alumni for

whom Hofstra possesses address information, nearly 40% provided Hofstra with addresses in

more than one state.  *See id.* ¶ 6.

On June 15, 2012, Hofstra produced to Plaintiffs the city, state, and zip code address

information in Banner for each member of the proposed class.  *See id.* Ex. B.[5]  The information

Hofstra produced included the database code used to categorize each student or alumni address,

and the date that an address and/or entry was last updated.  *See id.*  Notably, information in

Banner may not even reflect a student or alumni's current address, let alone that person's

domicile.  Docket No. 16.  For example, if a graduate moved to a different address some time

after graduation without updating it, Hofstra's address information for that graduate would not be

current.  Of the 2,986 students and alumni for whom Hofstra possesses address information, 49%

have not been updated since August 1, 2011.  *See* Citron Decl. at ¶ 7.

## ARGUMENT

## I.   THIS COURT HAS ORIGINAL JURISDICTION UNDER CAFA

To establish CAFA jurisdiction, the removing party "must show that it appears to a

*reasonable probability*" that (1) the putative class contains at least 100 members, (2) there is

minimal diversity of the parties, and (3) the amount in controversy exceeds $5 million.

*Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006) (emphasis added).  Courts "generally

evaluate jurisdictional facts . . . on the basis of the pleadings, viewed at the time when defendant

---

[5] Hofstra produced three different tables of address data to Plaintiffs:  (1) the Address table, (2) the Emergency Contact table, and (3) the Financial Aid table.  *See* Citron Decl., Exs. C-E.  The Address Table contained active address information for current law students and alumni.  The Emergency Contact table contained available emergency contact address information for current law students and alumni.  The Financial Aid table contained available address information for financial aid purposes for law students and alumni.  *See id.*, Ex. B.

files the notice of removal." *Id.* at 57.  A federal court has jurisdiction irrespective of whether an exception to CAFA is applicable, provided that the requirements for CAFA jurisdiction have been met.  *See, e.g.*, *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022 (9th Cir. 2007) (noting that, if the home-state exception to CAFA applies, "the court has jurisdiction, but . . . must decline to exercise such jurisdiction").

The pleadings here clearly contained sufficient facts to show that CAFA's jurisdictional prerequisites were met at the time Hofstra filed its notice of removal.  First, the purported class, alleged to "contain thousands of people," clearly exceeds the 100 member threshold.  Compl. ¶ 81.  Second, because named Plaintiff Richins is a Washington state resident (*id.* ¶ 16) and Hofstra is a New York citizen, it is reasonably probable minimal diversity exists.  *See Blockbuster*, 472 F.3d at 59 ("reasonable probability" that minimal diversity was present under CAFA because a named plaintiff was alleged to be a New York resident).  Third, Plaintiffs seek $100 million in relief (*id.* ¶ 3), a sum well in excess of the $5 million amount in controversy requirement.  In citing a string of non-CAFA cases for the proposition that "removal of actions from state courts to Federal courts are somewhat disfavored" (Brief in Support of Plaintiffs' Motion to Remand ("Br.") at 4), Plaintiffs overlook that CAFA was enacted specifically to ensure that cases like theirs *would be adjudicated in federal court*.  S. Rep. 109-14 at 43 (2005) ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant"); *see Sanchez v. Aviva Life & Annuity Co.*, 2009 U.S. Dist. LEXIS 79712, at *5 (E.D. Cal. July 16, 2009) ("[U]nder CAFA, any doubt about federal jurisdiction is resolved in favor of removal.").

Once CAFA jurisdiction has been established, the party objecting to the court's exercise of jurisdiction must prove by a preponderance of evidence that an exception applies.  *See In re*

*Sprint Nextel Corp.*, 593 F.3d 669, 673 (7th Cir. 2010).  As set forth below, this Court should exercise the jurisdiction bestowed upon it under CAFA because Plaintiffs failed to carry their burden of proving that an exception to CAFA applies.

## II.    REMAND IS IMPROPER BECAUSE PLAINTIFFS' ACTION DOES NOT QUALIFY FOR AN EXCEPTION TO JURISDICTION UNDER CAFA

For this action to be remanded, Plaintiffs must establish that it qualifies for (1) the local controversy exception, (2) the home-state controversy exception, or (3) the discretionary exception.  *Brook v. UnitedHealth Grp. Inc.*, 2007 U.S. Dist. LEXIS 73640, at *8 (S.D.N.Y. Sept. 28, 2007).  As CAFA's purpose is to expand federal jurisdiction over class actions, CAFA's exceptions are to be narrowly construed, "with all doubts resolved in favor of exercising [federal] jurisdiction over the case."  *See id.* at *15.

To establish the existence of the local controversy or home-state exceptions, Plaintiffs must prove, *inter alia*, that at least two-thirds of the alleged class members were New York citizens as of the date the Complaint was filed.  *See id.* at *11.  To be eligible for the discretionary exception, Plaintiffs must prove, *inter alia*, that at least one-third of the alleged class members were New York citizens as of the date the Complaint was filed.  *See id.* at *11. Plaintiffs have failed to offer the requisite proof concerning the citizenship of their class members.  Accordingly, Plaintiffs' Motion to Remand must be denied.

### A.    The Local Controversy and Home-State Exceptions Do Not Apply Because Plaintiffs Have Failed to Prove That Two-Thirds of the Members of Their Broadly Defined Class Are New York Citizens

Plaintiffs fail to qualify for the local controversy and home-state exceptions because they offer no specific proof demonstrating that New York was the domicile of two-thirds of the alleged class members as of February 1, 2012.  To establish the citizenship of any individual in a federal court case, the court must determine that individual's domicile.  *Palazzo v. Corio*, 232

F.3d 38, 42 (2d Cir. 2000).  A party's domicile is the place a person resides and "to which, whenever he is absent, he has the intention of returning."  *Id.* (internal quotation omitted).  To discern whether a person has an intention of returning, "[a] court must consider the entire course of a person's conduct . . . ."  *Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp. 2d 350, 356 (E.D.N.Y. 2008).  Here, Plaintiffs offer no evidence from which the Court could discern the citizenship of any member of the proposed class, let alone the two-thirds required to trigger the local controversy and home-state exceptions.  *See* 28 U.S.C. § 1332(d)(4)(A) (local controversy exception); § 1332(d)(4)(B) (home-state exception).

As an initial matter, it is noteworthy that Plaintiffs do not limit their class to New York citizens.  *See* Compl. ¶ 40.  Instead, Plaintiffs propose a class consisting of all students who are currently enrolled in or have attended Hofstra to obtain a J.D. degree from February 1, 2006 to February 1, 2012.  *Id.*  Now that Hofstra has properly removed this action to federal court, Plaintiffs must live with the consequences of their calculated decision to bypass a class defined by New York citizenship for the prospect of a larger recovery.  *In re Sprint*, 593 F.3d at 676 (describing the process of alleging a proposed class as a "tradeoff" for "plaintiffs and their lawyers" between having a smaller pool of class members in state court and a larger pool of class members in federal court); *Hart v. FedEx Ground Package Sys.*, 457 F.3d 675, 681 (7th Cir. 2006) ("While plaintiffs undoubtedly possess some power to seek to avoid federal jurisdiction by defining [the] proposed class in particular ways, they lose that power once a defendant has properly removed a class action to federal court.").  Indeed, Plaintiffs' broadly defined class has effectively foreclosed them from their preferred forum because they cannot prove, by a preponderance of the evidence, that two-thirds of their ranks were domiciled in New York.

Sensing the difficulty of their evidentiary hurdle, Plaintiffs urge this Court to adopt what they refer to as the "reasonably likely" standard in assessing whether Plaintiffs have

9

demonstrated that two-thirds of the members of the proposed class are domiciles of New York. Plaintiffs describe the "reasonably likely" standard as a "common sense approach" that has been used by district courts in the Second Circuit, and is less exacting than the preponderance of the evidence standard used by other federal courts.  Br. at 7-9.  Plaintiffs' claims about the "'reasonably likely' standard" are so completely (indeed spectacularly) wrong that it is clear Plaintiffs either are utterly confused about CAFA jurisprudence, or they are misrepresenting it.

First, there is no such thing as a "reasonably likely" standard for evaluating whether an exception to CAFA jurisdiction exists.  Federal courts have routinely recognized that an exception to CAFA jurisdiction must be proven by a preponderance of the evidence.  *See, e.g.*, *In re Sprint*, 593 F.3d at 673 (exception to CAFA jurisdiction must be proven by preponderance of the evidence); *Preston v. Tenet Healthsystem Mem'l Med. Ctr. Inc.*, 485 F.3d 793, 797 (5th Cir. 2007) (same); *Froud v. Anadarko E&P Co. Ltd. P'ship.*, 2010 U.S. Dist. LEXIS 35929, at *8 (E.D. Ark. Mar. 16, 2010) (same); *Lancaster v. Daymar Colls. Grp., LLC*, 2012 U.S. Dist. LEXIS 34347 (W.D. Ky. Mar. 14, 2012) (same); *Dicuio v. Brother Int'l Corp.*, 2011 U.S. Dist. LEXIS 131553, at *19 (D.N.J. Nov. 15, 2011) (same); *Dehart v. BP Am. Inc.*, 2010 U.S. Dist. LEXIS 3020 (W.D. La. Jan. 14, 2010) (same); *Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 515 (E.D. Pa. 2007) (same).  Even cases that Plaintiffs cite in support of their "reasonably likely" standard (*see, e.g.*, Br. at 8) make plain that a party asserting a CAFA exception must prove its existence by a preponderance of the evidence.  *See, e.g.*, *Joseph v. Unitrin, Inc.*, 2008 U.S. Dist. LEXIS 61726, at *11-12 (E.D. Tex. Aug. 11, 2008) (party objecting to CAFA jurisdiction "bears the burden of proving by a *preponderance of the evidence* the applicability of any claimed jurisdictional exceptions.") (emphasis added).

Plaintiffs' reliance on *Mattera v. Clear Channel Communications, Inc.*, 239 F.R.D. 70 (S.D.N.Y. 2006), and *Romano v. SLS Residential, Inc.*, 812 F. Supp. 2d 282, 288 (S.D.N.Y.

2011), for the proposition that district courts in the Second Circuit have used the "'reasonably likely' standard" (Br. at 7-8), is misplaced.  In *Mattera*, contrary to the plaintiffs here, the plaintiffs chose to limit the defined class to those with a New York workplace.  Judge Chin found that even though the defendants had not provided any evidence as to the citizenship of their class members, it was "reasonably likely that more than two-thirds of the putative class members of the proposed class — all of whom work in New York — are citizens of New York." *Mattera*, 239 F.R.D. at 80.  Thus, *Mattera* did not establish a lesser burden of proof for parties invoking CAFA exceptions; rather, it established that a court may make a reasonable assumption about the citizenship of a proposed class *based solely on the definition of the proposed class*. *See also Commisso v. PricewaterhouseCoopers LLP*, 2012 U.S. Dist. LEXIS 105151, at *19 (S.D.N.Y. July 26, 2012) ("reasonable to assume" that at least one-third of proposed class were New York citizens where class was limited to individuals working in defendant's New York office).[6]  Unlike the narrowly defined classes in *Mattera* and *Commisso*, Plaintiffs' proposed class, which extends well beyond those Hofstra law alumni working in New York at the time the Complaint was filed, is far too broadly drawn for the Court to make any assumptions about the citizenship of its members.[7]  *See Evans v. Walter Indus.*, 449 F.3d 1159, 1166 (11th Cir. 2006)

---

[6] Plaintiffs' assertion that the Southern District of New York "defin[ed] the standard of proof for the CAFA two-thirds requirement as 'reasonably likely'" in *Romano*, 812 F. Supp. 2d at 288, is incorrect.  The *Romano* court did not adopt, or even employ, a "reasonably likely" standard in adjudicating the relevant motion to remand.  Nor did it afford plaintiffs any sort of presumption of citizenship.  Rather, the court merely noted that *the defendant therein* had argued that, in light of *Mattera*, the reasonably likely standard should govern plaintiffs' motion to remand.  *See id.*

[7] Plaintiffs' citations to *Martin v. Lafon Nursing Facility of the Holy Family, Inc.*, 548 F. Supp. 2d 268 (E.D. La. 2008), *Bennett v. Board of Commissioners for Eastern Jefferson Levee District*, 2007 WL 2571942 (E.D. La. Aug. 31, 2007), and *Joseph*, 2008 U.S. Dist. LEXIS 61726, for the proposition that the Court's assessment of CAFA jurisdiction should turn on "common sense" (Br. at 8), are also inapposite.  The claims in *Martin* and *Bennett*, respectively, arose in the immediate aftermath of Hurricane Katrina, a fact that each court acknowledged justified employing a "common sense" analysis to the jurisdictional question.  *See Martin*, 548 F. Supp.

(plaintiffs' difficulty in establishing the composition of their proposed class was "to a considerable degree a function of the composition of the class designed by plaintiffs").

Though Plaintiffs also cite *Sorrentino* in support of their "reasonably likely" standard, that decision actually torpedoes their argument.  In *Sorrentino*, plaintiffs argued, *inter alia*, that the two-thirds requirement was satisfied because "common sense dictates that it is reasonably likely that more than two-thirds of the putative class," which consisted of former tenants of an apartment complex, were citizens of New York.  *Sorrentino*, 588 F. Supp. 2d at 356.  To bolster their position, the *Sorrentino* plaintiffs submitted address information for a sample of their proposed class.  *See id.*  The address information was comprised of forwarding addresses for certain class members who had left the complex, and addresses at the complex for class members who remained there.  *See id.*

In holding that plaintiffs failed to meet their burden of proving that two-thirds of their class were citizens of New York, the *Sorrentino* court emphasized plaintiffs' failure to offer specific proof establishing the domicile of members who resided at the complex at the time the address data was collected.  *Id.* at 356-57.  Whereas the court could infer that a member whose forwarding address was in New York intended to remain in New York, "no such inference could be made regarding the parties who remained at the [complex]" when the information was collected.  *Id.* at 357.  "In determining intent to remain, courts consider such factors as:  voting registration and voting practices; the location of real and personal property; the location where

---

2d at 276-77; *Bennett*, 2007 WL 2571942, at *5.  The *Joseph* court, in contrast, noted that "a common sense presumption should be utilized in determining whether citizenship requirements have been met" when "a proposed class *is discrete in nature*."  2008 U.S. Dist. LEXIS 61726, at *16 (emphasis added).  The proposed class in *Joseph,* Texas residents who purchased homeowner's insurance from a company that only issued such policies in Texas, is far narrower than Plaintiffs' proposed class, and, by definition, indicative of its members' domiciles.  *Id.* at *18.

taxes are paid; the location of brokerage and bank accounts; driver's and other licenses; membership in churches, clubs, and associations; whether the person owns or rents his place of residence; and the locations of the person's physician, lawyer, accountant, dentist, or stockbroker." *Id.* at 356. Because the *Sorrentino* plaintiffs failed to offer any such information, "the Court simply [could not] make a determination as to [the] intent [to remain in New York] of those persons who had not yet vacated the [complex] . . . ." *Id.* at 357. That plaintiffs had produced the once-current addresses of persons living at the complex established only that "at one time, [those persons] maintained apartments in New York. This is insufficient, without more, to show an intent to remain in New York." *Id.*

Instead of buttressing Plaintiffs' position, *Sorrentino* sharply illustrates the inadequacy of Plaintiffs' attempt to prove citizenship by citing stale address information from Banner and employment statistics published by *U.S. News and World Report*. Neither piece of data, nor the two taken together, demonstrates that two-thirds of Plaintiffs' broadly defined class were domiciles of New York as of February 1, 2012.

First, Plaintiffs' argument that, because the Banner data indicates that "77% of the proposed class list New York addresses," that same amount was domiciled in New York as of February 1, 2012, is illogical. Plaintiffs tellingly say nothing of how many of those individuals also listed addresses from other states, what type of address codes (e.g., "Mailing," "Business or Work," etc.) accompanied those addresses, and what percentage of those addresses were updated on or around February 1, 2012. The mere fact that a student or alumni may have at some distant point listed a New York address says nothing about that individual's domicile as of February 1, 2012. For example, without offering any additional proof on the matter, Plaintiffs essentially ask this Court to assume that the following students were domiciles of New York on February 1, 2012:

- Student 426323107 (listed a New York address coded "Mailing" that was last updated on December 11, 2001, *more than 10 years before this suit was filed*)

- Student 750592302 (listed a New York address coded "Mailing" that was last updated on December 18, *2001*)

- Student 110060301 (listed a New York address coded "Mailing" that was last updated on March 4, *2002*)

- Student 404723305 (listed a New York address coded "Payroll" that was last updated on September 16, *2002*)[8]

- Student 346971401 (listed a New York address coded "Business" that was last updated on September 26, *2002*)

- Student 460273201 (listed a New York address coded "Payroll" that was last updated on September 26, *2002*)

- Student 322989206 (listed a New York address coded "Payroll" that was last updated on February 5, *2003*)

- Student 772277309 (listed a New York address coded "Payroll" that was last updated on November 10, *2003*)

- Student 984907504 (listed a New York address coded "Payroll" that was last updated on December 10, *2003*)

- Student 947160608 (listed a New York address coded "Mailing" that was last updated on May 3, *2004*)

- Student 814101206 (listed a New York address coded "Mailing" that was last updated on July 27, *2005*)

- Student 767690301 (listed a New York address coded "Business" that was last updated on January 4, *2008*)

- Student 610280606 (listed a New York address coded "Business" that was last updated on February 27, *2008*)

- Student 584035501 (listed a New York address coded "Business" that was last updated on October 9, *2008*)

---

[8] The "Payroll" code indicates that the student or alumni completed a payroll data form at Hofstra University. *See* Citron Decl., Ex. B.

- Student 645172101 (listed a New York address coded "Business" that was last updated on October 15, *2008*)

See Br., Ex. G.  Plaintiffs do not even attempt to explain how such information, which includes some addresses that are more than ten years old, and others that were taken from student payroll data forms,  constitutes  proof of citizenship.  *Cf. Sorrentino*, 588 F. Supp. 2d at 356 (holding that *current* addresses of prospective class members were insufficient to prove citizenship).

Indeed, even if the Banner data indicated that more than two-thirds of the proposed class had provided Hofstra with New York "Mailing" addresses on or around February 1, 2012 (and it does not), Plaintiffs still would fail to satisfy their burden of proof because such data does not sufficiently prove anything even about the residences — let alone domiciles — of those Plaintiffs.  "[T]he majority of district courts [have found] that a court may not draw conclusions about the citizenship of class members based on things like their . . . mailing addresses."  *In re Sprint*, 593 F.3d at 674.  Proving domicile requires more.  "Absent evidence of any factor that bears on the class members' intent to remain" in New York, Plaintiffs cannot prove that two-thirds of the proposed class were domiciles of New York.  *See Schwartz v. Comcast Corp.*, 2006 WL 487915, at *6 (E.D. Pa. Feb. 28, 2006).

Consistent with their other efforts to deflect from their deficient evidentiary showing, Plaintiffs complain that Hofstra "fail[e]d to provide a residential address [for each student and alumni], while providing numerous other addresses," and that such failure "should be construed against it."  That position is devoid of any basis in law.  Hofstra's production was entirely consistent with Magistrate Judge Brown's Order, and included all of the relevant address information in Banner, including all applicable address codes.  Banner does not include a "Residential" code for student and alumni addresses.  While that fact may make it more difficult for Plaintiffs to gather data relating to residency, any challenges Plaintiffs encounter are a direct

product of their broadly defined class.  *See In re Sprint*, 593 F.3d at 676 (plaintiffs "could have

guaranteed that the suit would remain in state court" had they defined their class in terms of

citizenship).  Further, as noted *supra*, indicia of residency is not proof of citizenship.  *See*

*McMorris v. TJX Cos.*, 493 F. Supp. 2d 158, 162 (D. Mass. 2007) ("Federal courts that have

focused on the issue consistently have rejected the proposition that mere residence establishes a

party's citizenship for the purpose of diversity.").

  Employment statistics published by *U.S. News and World Report* are similarly incapable

of demonstrating the current citizenship of the proposed class.  First, while Hofstra's proposed

class spans the six-year period from 2006 to 2012, the data Plaintiffs cite pertains only to the

classes that graduated from Hofstra in 2006, 2008, 2009, and 2010.  Br. at 11.  They cite no data

at all for the classes of 2007, 2011, or for those class members currently enrolled at Hofstra.

Further, the statistics they cite relate to only a subset of each relevant graduating class, namely,

those graduates known to be employed at the time of reporting.  *See* Citron Decl. at ¶ 8.  The

statistics also fail to account for graduates who were unemployed or who failed to report their

employment at the time of reporting.  *Id.* at ¶ 9.  Finally, like the Banner data, the *U.S. News*

statistics are not indicative of domicile.  *See Lancaster v. Daymar Colls. Grp., LLC*, 2012 WL

524459, at *5 (W.D. Ky. Feb. 15, 2012) ("*Lancaster I*") ("Although the NCES reports may show

what percentage of Daymar's Louisville students are objectively present in Kentucky," it "is not

evidence that members of the proposed class are *citizens* of Kentucky" because "it does nothing

to demonstrate their subjective intent to stay in the state.") (emphasis in original).

  CAFA jurisprudence within and outside of the Second Circuit leaves no doubt that

Plaintiffs fall woefully short of carrying their burden of proof.  The *Sprint* decision is particularly

instructive because the Court considered and rejected similar arguments to those advanced by

Plaintiffs here.  In *Sprint*, plaintiffs sought a remand to Kansas state court via a CAFA exception

after defendant Sprint Nextel ("Sprint") had removed plaintiffs' suit, which had been brought under the Kansas consumer protection statute. *In re Sprint*, 593 F.3d at 671. The plaintiffs' class in *Sprint*, which was far narrower than Plaintiffs' class here, was limited to those individuals who (1) had a Kansas cell phone number, (2) received their cell phone bill at a Kansas mailing address, and (3) paid a Kansas "USF fee," which was applied to all long distance calls within Kansas. *Id.* The *Sprint* plaintiffs did not submit any additional evidence of citizenship, but argued that it followed that two-thirds of a class consisting of persons with Kansas phone numbers and mailing addresses were Kansas citizens. *Id.* at 673. The *Sprint* court acknowledged that it was "inclined to think that at least two-thirds of those who have Kansas cell phone numbers and use Kansas mailing addresses . . . are probably Kansas citizens," but concluded that plaintiffs had failed to prove citizenship because:

> [T]hat's all guesswork. Sensible guesswork, based on a sense of how the world works, but guesswork nonetheless. There are any number of ways in which our assumptions about the citizenship of this vast class might differ from reality. For example, we may have grossly underestimated the presence of out-of-state businesses or the number of Kansas residents who don't intend to stay indefinitely. . . . Ultimately, we agree with the majority of district courts that a court may not draw conclusions about the citizenship of class members based on things like their phone numbers and mailing addresses.

*Id.* at 674.

Like the plaintiffs in *Sprint*, Plaintiffs ask the Court to assume that two-thirds of the members of their broadly defined class are New York citizens without offering any proof of that fact. This is insufficient. *See In re Sprint*, 539 F.3d at 675; *Gerstenecker v. Terminix Int'l, Inc.*, 2007 WL 2746847, at *2 (S.D Ill. Sept. 19, 2007) (denying motion to remand where "[i]n essence, plaintiffs ask this Court to conclude that because the real property at issue is located in Illinois, two-thirds of the proposed class . . . are citizens of Illinois. That may or may not be true but either conclusion requires a leap of faith this Court cannot make."); *Phillips v. Severn Trent*

*Envtl. Serv., Inc.*, 2007 WL 2757131, at *3 (E.D. La. Sept. 19, 2007) (while "there is some intuitive appeal to the claim" that two-thirds of the people who lived in a Louisiana county during a one-week period in 2007 were citizens of Louisiana two weeks later, when the complaint was filed, such intuition did not establish by a preponderance of the evidence that the citizenship requirement was satisfied); *McMorris*, 492 F. Supp. 2d at 162 (denying motion to remand where proposed class was limited to Massachusetts residents but plaintiffs failed to offer any evidence that two-thirds of class members were Massachusetts citizens); *see also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1165-66 (11th Cir. 2006) (rejecting assertion that two-thirds of class were Alabama citizens, where class was defined as "[a]ll property owners, lessees, [and] licensees of properties" on which the defendants released toxins 85 years earlier," as well as "all individuals who have come into contact" with those toxins, because plaintiffs failed to produce any evidence that two-thirds of class were ever Alabama citizens); *Lancaster v. Daymar Colls. Grp., LLC*, 2012 WL 884898, at *8-9 (W.D. Ky. Mar. 14, 2012) ("*Lancaster II*") (concluding that remand would be improper where plaintiffs "would have the Court make a number of assumptions" to conclude that plaintiffs had satisfied their burden of proof, and noting that "it would be sheer speculation for the Court to assume that evidence showing the residence of [certain members of the proposed class] is sufficient to establish the citizenship of the entire class as of the date the complaint was filed"); *King v. Safeway*, 2008 WL 1808545, at *2 (N.D. Cal. Apr. 22, 2008) (rejecting plaintiffs' argument that a class consisting of persons in California necessarily included the requisite percentage of California citizens).

The *Schwartz* decision is similarly instructive.  In *Schwartz*, the court refused to assume that a person was a Pennsylvanian citizen merely because that person subscribed to residential high-speed internet service in Pennsylvania.  *Schwartz*, 2006 WL 487915, at *5.  Instead, the court focused on whether plaintiffs had produced, as is required to prove domicile, evidence of

the class members' "intent to remain" in Pennsylvania.  *Id.*  In explaining its reasoning, the *Schwartz* court observed that "[a]n intent to maintain internet service does not suggest an intent to remain permanently in one state," and noted that "there may be numerous members of the proposed class who are citizens of different states but who resided or did business in Pennsylvania and subscribed to [defendant's high-speed internet service] during the relevant period."  *Id.*  The same logic applies here:  Evidence of a New York mailing or business address says nothing about one's intent to remain permanently in New York, and Plaintiffs' proposed class undoubtedly includes individuals who were New York residents during some portion of the six-year class period, but are not currently New York residents.  *See Nicholas v. Progressive Direct Ins.*, 2007 WL 1035014, at *3 (E.D. Ky. Mar. 31, 2007) (noting that it would be "sheer speculation" to assume that two-thirds of the members of a class remained citizens of a state during a five-year class period).

      *Anthony* further reinforces the inadequacy of Plaintiffs' evidentiary showing.  In *Anthony*, the district court rejected plaintiffs' argument that two-thirds of their proposed class were Pennsylvania citizens where the class was defined as everyone who worked at a particular Pennsylvania factory over a thirty-five-year period.  *Anthony*, 535 F. Supp. 2d at 517.  The court held that even though satisfaction of the citizenship requirement for a class so defined "may be a reasonable inference," that inference did not satisfy plaintiffs' burden of proving citizenship.  *Id.*  Considering that some former employees of the factory may have left the state, and others may never have been citizens thereof, plaintiffs could not establish the requisite two-thirds percentage absent evidence of citizenship.  *Id.*

      Plaintiffs further attempt to skirt their lack of evidence on citizenship by arguing that "it can be assumed that [one's] 'mailing' address is actually a residential address and thereby evidence of citizenship."  Br. at 10.  That argument, which effectively equates one's mailing

address with citizenship, is incorrect.  None of the cases that Plaintiffs cite in support of that proposition involve jurisdiction under CAFA, and "[f]ederal courts that have focused on the issue consistently have rejected the proposition that mere residence establishes a party's citizenship for the purpose of diversity."  *McMorris*, 493 F. Supp. 2d at 162 (plaintiffs failed to satisfy burden of showing that two-thirds of putative class were Massachusetts citizens).

Plaintiffs' additional argument that, because one's "places of business or employment" is "an influential factor" in determining domicile, the *U.S. News* data justifies a remand, is also unavailing.  First, as noted *supra*, the *U.S. News* data is dated and reflects only a subset of the purported class.  Second, while one's place of business or employment may indeed be a factor in determining domicile, that fact alone is insufficient to do so.  *See Sorrentino*, 588 F. Supp. 2d at 356 ("A court must consider the entire course of a person's conduct in order to determine the relevant intent [regarding domicile].") (citation omitted).  To that point, each case that plaintiffs cite for the proposition that one's place of employment is an "influential factor" in determining domicile is either inapposite or involves a breadth of information concerning one's domicile that is utterly absent here.  *See NYC St. Tree Consortium, Inc. v. Eber-Schmid*, 2009 WL 398726, at *3-4 (S.D.N.Y. Feb. 18, 2009) (defendants were domiciles of New York because, *inter alia*, they had rented an apartment and been registered to vote in New York for decades, had paid New York state income taxes and city resident taxes, had never paid New Jersey income taxes, had listed New York as their state of residence on their federal tax returns, and had registered and insured their automobile in New York); *Bank of India v. Subramanian*, 2007 WL 1424668, at *4-5 (S.D.N.Y. May 15, 2007) (defendants failed to prove that their domicile had changed from New Jersey to Canada by the time litigation against them had commenced where, *inter alia*, the chief evidence in support of their claim consisted of "self-serving declarations" that conflicted with objective facts); *Sluberski v. Lakeside Manor Home for Adults*, 1996 WL 1088902, at *3

20

(E.D.N.Y. Nov. 19, 1996) (decedent was a domicile of New Jersey prior to her admittance to New York treatment center because, *inter alia*, she had lived her entire life in New Jersey, maintained a residence in New Jersey until her death, her estate was probated in New Jersey, and her husband and son resided in New Jersey).[9]

Finally, Plaintiffs' claim that Hofstra bears the burden of proving citizenship because "'a party attempting to prove a change in domicile . . . bears the burden of proof by clear and convincing evidence," (Br. at 12-13 (quoting *Parekh v. Econ. Premier Assur. Co.*, 2012 WL 1020426 (E.D.N.Y. Jan. 17, 2012))) is entirely backwards. For Hofstra to bear a burden of proving a change in the class members' domiciles, Plaintiffs would necessarily have had to first establish where those members were domiciled. Plaintiffs' attempt to obfuscate their failure to do so by citing a legal proposition that is wholly inapplicable here is as transparent as it is baseless. *See Sorrentino*, 588 F. Supp. 2d at 356 (current addresses of prospective class members insufficient to prove citizenship).

**B.     There is No Basis for Discretionary Remand**

Plaintiffs' failure to establish entitlement to a mandatory remand is as complete as its failure to qualify for a discretionary remand. To qualify for consideration under the discretionary exception, Plaintiffs are required to prove that "*greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate* and the primary defendants are citizens of the State in which the action was originally filed." 28. U.S.C. §

---

[9] Plaintiffs' citation to a recent order in *Phillips v. DePaul University*, No. 1:12-cv-01791, Docket No. 19 (E.D. Ill. April 24, 2012), is also inapposite. In *Phillips*, the court granted plaintiffs' motion to remand where defendant DePaul's own evidence indicated that 65.7% of the purported class members were citizens of Illinois. *Id.*  Neither party here provided any evidence of residence, let alone citizenship.

1332(d)(3) (emphasis added).  CAFA provides that the Court shall consider the following factors

in determining whether it should decline jurisdiction under the discretionary exception:

> (A) whether the claims asserted involve matters of national or interstate interest;

> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

*Id.*

As demonstrated above, Plaintiffs have not submitted any evidence concerning the

citizenship of the members of the proposed class.  "As such, the Court cannot determine whether

more than one-third of the members of the proposed class are citizens of [New York], a factor

that must be present to trigger the discretionary analysis."  *Lancaster I*, 2012 WL 524459, at *10

(declining to exercise jurisdiction under the discretionary exception "because the Plaintiffs have

failed to present evidence that more than one-third of the members of the proposed class are

citizens of Kentucky").

In any event, the relevant factors for assessing whether discretionary remand is proper

demonstrate conclusively that this matter should remain in federal court.  First, Plaintiffs' suit —

one of several nearly identical suits filed against law schools across the United States —

22

unquestionably involves "matters of national or interstate interest." 28 U.S.C. § 1332(d)(3)(C).[10]

That this action is but one piece of a much broader, nationwide litigation agenda advanced by

Plaintiffs' counsel is confirmed by Plaintiffs' own Complaint:

- "This action seeks to remedy a systemic, ongoing fraud that is ubiquitous in *the legal education industry* and threatens to leave a generation of law students in dire financial straits." Compl. ¶ 1 (emphasis added).

- "Plaintiffs want to bring an element of 'sunlight' or transparency to the way *law schools* report post-graduate employment data and salary information . . . ." *Id.* (emphasis added).

- "*Hofstra Law and the law school industry* in general have been astonishingly successful in deceiving prospective students about the value of a law degree in an effort to maintain and increase both enrollment and tuition." *Id.* ¶ 9 (emphasis added).

- "After much hand-wringing and increased scrutiny, the legal profession has finally begun to recognize the systemic fraud *the law school industry* has been perpetrating." *Id.* ¶ 11 (emphasis added).

- "*[I]f law schools* were required to employ proper accounting methodologies to ascertain the true employment status of all of their graduates . . . the employment number would be much lower." *Id.* ¶ 44 (emphasis added).

- "[M]uch like *many other law schools*, [Hofstra] tabulates, calculates and tallies the raw data inputted in the job surveys filled out be recent graduates in a shoddy, slipshod manner . . . ." *Id.* ¶ 45 (emphasis added).

- "This [allegedly deceptive] practice is emblematic of the extreme measures *many law schools across the country* have undertaken recently to paper over the devastation that the Great Recession has wrought." *Id.* ¶ 47 (emphasis added).

- "[I]nstead of coming clean to prospective and current students and acknowledging the steep odds that graduates face in securing gainful employment, *law schools* continue to bury their heads in the sand like nothing is wrong . . . ." *Id.* (emphasis added).

- "[P]ractitioners and politicians alike are starting to roundly demand that *law schools* change their deceptive ways and accurately report all available employment information." *Id.* ¶ 65 (emphasis added).

---

[10] *See* Citron Decl., Ex. A (listing substantially similar complaints recently filed against law schools across the United States).

- "Senator Barbara Boxer of California has sent three separate letters to the ABA taking them to task for failing to properly police *the law school industry*." *Id.* ¶ 66 (emphasis added).[11]

Plaintiffs' contention that this action does not involve matters of national concern is undermined by their own counsel, who have filed at least two nearly identical complaints in federal court,[12] and acknowledged their nationwide litigation aspirations in various public fora.[13] Because Plaintiffs' counsel's self-proclaimed assault against the "legal education industry" involves matters of national concern, and in the interest of avoiding disparate results across a host of various jurisdictions, Plaintiffs' action should be adjudicated in federal court.

The third factor — whether Plaintiffs have pleaded in a manner that seeks to avoid federal jurisdiction — also weighs against remand, because "Plaintiffs allege that there are over 100 members in the putative class, that there is minimal diversity between the parties, and that the amount in controversy exceeds $5,000,000." *See Foley v. Cordillera Golf Club, LLC*, 2012 U.S. Dist. LEXIS 48108 (D. Colo. Apr. 5, 2012) (third factor weighs in favor of federal court retaining jurisdiction where plaintiffs allege that requirements of CAFA jurisdiction are met).

The volume of recent litigation against law schools also tilts the sixth factor in favor of federal jurisdiction, as, clearly, other class actions "asserting the same or similar claims on behalf of the same or other persons" have been filed "during the 3-year period preceding the filing" of

---

[11] These are but some of the myriad allegations in the Complaint that illuminate the national character of Plaintiffs' suit.

[12] *See Harnish v. Widener Univ. Sch. Of Law*, No. 12-cv-00608-WHW-MCA (D.N.J. 2012) (Compl. ¶ 14) (noting that the District of New Jersey has original jurisdiction over the matter under CAFA); *MacDonald, Jr. v. Thomas M. Cooley Law Sch.*, No. 11-cv-00831-GJQ (W.D. Mich. 2011) (Am. Compl. ¶ 13) (same).

[13] *See, e.g.*, Lisa van der Pool, *Law Schools Sued After Grads Can't Find Jobs*, CBS Boston Business Journal, Apr. 4, 2012 (Plaintiffs' counsel noting that they plan to make 2012 the "year of law school litigation"); Karen Sloan, *Fresh Round of Litigation Targets 12 Law Schools Over Jobs Data*, The National Law Journal, Feb. 1, 2012 (Plaintiffs' counsel noting that "[t]he key, right now, is to bring as many law schools as possible into the fray.").

24

Plaintiffs' suit.  28. U.S.C. § 1332(d)(3)(F); *see* Citron Decl., Ex. A.  For example, a group of similar plaintiffs (represented by Plaintiffs' counsel) asserted similar factual allegations against New York Law School on November 21, 2011 in *Gomez-Jiminez v. New York Law School*, Index No. 652226/2011 (Sup. Ct. N.Y. Co. 2011).  *See Rasberry v. Capitol Cnty. Mut. Fire Ins. Co.*, 609 F. Supp. 2d 594, 604 (E.D. Tex. 2009) (noting that "the inquiry" with respect to whether same or similar claims have been asserted "'should not be whether identical (or nearly identical) class actions have been filed,' but rather, 'whether similar *factual allegations*'" have been asserted") (citation omitted) (emphasis in original).  The "interests of justice" thus clearly weigh in favor of this Court's retention of jurisdiction over this matter.  *See Webb v. Riceland Foods, Inc.*, 2008 U.S. Dist. LEXIS 112425, at *5 (E.D. Ark. Nov. 17, 2008) (noting that whether another class action was previously filed "weighs heavily in favor of federal court jurisdiction and should tip the scales for the Court to exercise discretionary jurisdiction").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' motion to remand be denied.

Dated:  August 21, 2012
        New York, New York                    Respectfully submitted,

                                              PROSKAUER ROSE LLP

                                              By:   /s Lawrence I. Weinstein
                                                    Lawrence I. Weinstein
                                                    Evan B. Citron
                                                    Eleven Times Square
                                                    New York, NY 10036-8299
                                                    (212) 969-3000

                                                    *Attorneys for Defendants*
                                                    *Hofstra University and*
                                                    *Maurice A. Dean School of Law*
                                                    *at Hofstra University*